Whaley, Judge,
dehvered the opinion:
The Navy Department (Bureau of Supplies' and Accounts), after due advertisement and bids, entered; into a formal written contract with the plaintiff on October 24, 1918, for the delivery of 10,000 oak-hewn railroad ties at the unit price of $1.88,.to. the Navy .Lumber Annex (Navy Yard) Portsmouth, Va, The plaintiff proceeded at once to perform the contract, '.purchased • ties from various sources, and had them dehvered alongside railroad tracks; where. they-could be. inspected, graded, and loaded for shipment, .to the navy yard.
Some. time before the formal execution of the .contract with the, plaintiff, but after the advertisement fop bids, ithe Navy .Department, acting through the Bureau of .Supplies and Accounts, .entered into negotiations with the United States Railroad Administration for the furnishing of crossties under .the same specifications upon which plaintiff's contract was based. The Railroad Administration specifications were furnished .the Bureau of Supplies and Accounts;.and the highest grade (No. 5). was an inferior grade to that which the specifications of the bureau (requisition 266) required, but the.price was proportionately lower also,, being $1.25 per tie instead of $1.88 .per tie as in plaintiff’s contract,
Qn October 10,1918, an order was placed with theRailroad Administration by the Bureau of Supplies and Accounts for *358 10,000 ties. The record is not clear as to whether the Railroad Administration was to furnish the same grade as called for in plaintiff’s contract (requisition 266), or as set out in the specifications for crossties of the Railroad Administration. The correspondence clearly shows the railroads were strongly opposed to deliveries of the oak-hewn ties to anyone and desired to retain them for their own use.
On November 6,1918, the Railroad Administration notified the Bureau of Supplies and Accounts that an allocation of 10,000 ties had been made to both the Seaboard Air Line and the Norfolk Southern Railroad in equal proportions. No formal written contract was entered into at this time between the Navy Department and the Railroad Administration or either of the railroads to which the allocations had been made. The record shows only the order, acceptance, and allocation. However, on November 26, 1918, the Railroad Administration by letter quoted prices to the Bureau of Supplies and Accounts as follows:
Seaboard Air Line, $1.30 f. o. b. ears shipping point:
Norfolk Sou. Grade 1_$0. 75
“ 2------85
“ 3______ 1.05
“ 4___ 1. 15
“ 5___ 1. 25
While these transactions were taking place the plaintiff was preparing to deliver and had delivered its first car of crossties on November 12, 1918, and made further deliveries in December, 1918, and throughout the following months to October 1, 1919. There is no dispute that from the total deliveries made by the plaintiff and inspected by the defendant, 5,088 ties were accepted and paid for at the unit price of $1.88 and the plaintiff received payment for them in the sum of $9,575.44. This suit revolves around the remaining 4,912 crossties. In the latter part of November, 1918, sixteen cars of ties were delivered at the Navy Annex, Portsmouth, Ya. The Norfolk Southern Railroad delivered eleven and the Seaboard Air Line five. Plaintiff was paid for the accepted ties in both of these shipments. Subsequently the amount paid plaintiff for the ties in the five cars of the Seaboard Air Line was deducted from amounts due plaintiff and payment has been made to the Seaboard Air Line. *359 The evidence establishes these cars were never intended to be delivered nnder plaintiff’s contract and clearly were intended to be part of the allotment to the Seaboard Air Line. From now on they disappear ont of the picture.
The main difficulty is with the eleven cars delivered by the Norfolk Southern Railroad. The evidence discloses that some of the ties included in these cars delivered to the plaintiff had been collected by plaintiff’s buyer for delivery under the contract in suit. It is also clear that the Railroad Administration believed these ties to be the property of the plaintiff, because it refused to enter into a contract with the Navy Department for months, and then only when these ties had been excluded from the contract with it. Of the ties delivered from these eleven cars 2,305 ties were inspected and accepted and are therefore to be considered as deliveries under plaintiff’s contract and settled for under its terms. This leaves only 2,607 ties undelivered. During this period the Bureau of Supplies and Accounts was rendering statements to the plaintiff claiming the wrongful diversion of these ties to plaintiff’s account and making arbitrary deductions and allowances. The plaintiff repeatedly protested the statements of account rendered to it and was ready and willing to perform the balance of the deliveries on the contract.
On July 12, 1920, the defendant notified plaintiff:
“Inasmuch as contract 42876 was erroneously awarded to you at the outset, and deliveries thereunder were not desired, any portion of the railroad ties called for under this contract which have not now been delivered are hereby canceled and this contract is closed.”
It will be noted there is no charge of failure to perform on the part of the plaintiff, but a plain, open admission that the only reason the contract is canceled is because the Navy Department, acting through the Bureau of Supplies and Accounts, had erroneously awarded a contract and the articles included under the contract were not desired. There is no claim the contract was illegally awarded or that the plaintiff was in any way at fault. The plaintiff was awarded the contract as the lowest bidder after advertisement for bids and the contract was duly and formally executed by both parties.
*360 At the time of the cancellation, and previous thereto, the plaintiff had on hand at its yard ties of the requisite kind, quality, and grade called for in the contract and was prepared and ready to make deliveries. The defendant refused to accept any more deliveries. Subsequent to the cancellation, the market for ties declined rapidly and plaintiff was forced to sell at the then fair market value and received for the 2,607 ties the sum of $1,225. Had plaintiff been permitted to deliver according to the terms of its contract it would have received the sum of $4,901.16. Plaintiff sustained a loss of $3,676.16, for which it is entitled to recover.
The whole record is replete with the fact that the entire cause of this controversy is due to the action of the Bureau of Supplies and Accounts, having several contracts for ties, endeavoring to take advantage of the lower unit prices of the railroad allotment and applying these unit prices to deliveries made by plaintiff under its contract. Of course, the plaintiff was entitled to payment at the unit price for all deliveries made under its contract. In making its bid, in the award of the contract, the execution of the contract, and throughout the entire period of the contract until its cancellation by the defendant, the plaintiff has acted in good faith.
The plaintiff was credited for all deliveries made under its contract with the unit price called for under the contract with the Norfolk Southern Railroad instead of the unit price called for in its own contract, and this difference, $1,554.95, the plaintiff is also entitled to recover.
The plaintiff therefore is entitled to a judgment of $5,231.11. It is so ordered.
Williams, Judge; LittletoN, Judge; Green, Judge; and Booth, Chief Justice, concur.